# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

MELISSA R. JANDLE,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 1:17-cv-78
Black, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff Melissa R. Jandle brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's statement of errors (Doc. 13) and the Commissioner's response in opposition (Doc. 19).

## I. Procedural Background

Plaintiff filed her applications for DIB and SSI in April 2014, alleging disability since January 1, 2009 due to a combination of physical and mental impairments.[1] These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was afforded a hearing before administrative law judge ("ALJ") Elizabeth A. Motta on January 11, 2016. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing. On February 1, 2016, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ

---

[1] Plaintiff previously filed applications for SSI and DIB in April 2011, alleging disability since January 1, 2009. (Tr. 22, Tr. 218-30). The applications were denied initially on July 28, 2011 and plaintiff did not pursue the applications further. (Tr. 22, Tr. 151-57). Therefore, the ALJ determined that the relevant period in this case began on July 29, 2011 as "the doctrine of *res judicata* applies to preclude consideration of the issue of disability before July 28, 2011" and "[t]he record contains no new significant evidence dated through the July 2011 denial, and there are no other grounds on which to reopen the prior application." (Tr. 22). Plaintiff does not challenge this determination. (*See* Doc. 13).

the final administrative decision of the Commissioner.

**II. Analysis**

    **A. Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

    1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

    2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

    3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

    4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

    5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

2

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2015, but not thereafter.

2. The [plaintiff] engaged in substantial gainful activity in 2014 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. However, there has been a [sic] continuous 12-month periods during which the [plaintiff] did not engage in substantial gainful activity. The remaining findings address the periods the [plaintiff] did not engage in substantial gainful activity.

4. The [plaintiff] has the following severe impairments: depressive disorder and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

5. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c): lift and carry up to 50 pounds occasionally and 25 pounds frequently; postural activities, such as climbing stairs/ramps, balancing, stooping, kneeling, crouching, and crawling, limited to frequently; simple, repetitive tasks; low stress work with no strict production quotas or fast pace and only routine work with few changes in the work setting; no contact with the public as part of job duties; only occasional contact with coworkers and supervisors, including no teamwork or over-the-shoulder supervision; and no driving as part of job duties.

7. The [plaintiff] is capable of performing past relevant work as a cook helper. This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

8. The [plaintiff] was born [in] . . . 1977 and has been a younger individual age 18-49 at all times relevant to this decision (20 CFR 404.1563 and 416.963).

9. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. In the alternative, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the [plaintiff] also can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

12. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from July 29, 2011, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 24-35).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of approximately 2.2 million unskilled jobs in the national economy at a medium exertional level, such as store laborer (100,000 jobs nationally), hand packager (150,000 jobs nationally), and washer (40,000 jobs nationally). The ALJ also relied on the VE's testimony to find that plaintiff would be able to perform the requirements of approximately 1.75 million unskilled jobs in the national economy at a light exertional level, such as marker (40,000 jobs nationally), warehouse checker (60,000 jobs nationally), and mail clerk (89,000 jobs nationally). (Tr. 34-35, 64).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Medical Evidence**

*i. Medical records*[3]

In November 2011, plaintiff visited her family medicine physician Jewel Stevens, M.D., and reported depression. (Tr. 611). Plaintiff reported her mood status as "uncontrolled" and

---

[3] The undersigned will solely consider the mental health evidence of record. In her statement of errors, as discussed below, plaintiff challenges the weight given to the opinion of her treating physician Dr. Jewel Stevens, M.D., and consultative examiner Dr. Nancy Schmidtgoessling, Ph.D. Drs. Stevens and Schmidtgoessling both gave opinions on plaintiff's mental impairments. (*See* Tr. 529-31, Tr. 509-18). Therefore, the Court agrees with the Commissioner that plaintiff has waived any arguments related to her physical impairments. *See Kuhn v. Washtenaw County*, 709 F.3d 612, 624 (6th Cir. 2013) (The Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (internal citations omitted). In addition, because plaintiff previously filed applications for DIB and SSI in April 2011 and has not challenged the Commissioner's res judicata determination, the Court will only discuss the relevant mental health evidence from the period of July 29, 2011 through the date of the ALJ's decision on February 1, 2016.

5

reported that she was unsatisfied with her current treatment. (*Id.*). Treatment records note that plaintiff's compliance taking prescribed medication for her depression was poor. On examination, plaintiff was well-appearing, well-nourished, and in no apparent distress. (*Id.*). Dr. Stevens assessed depression and directed plaintiff to continue taking her current antidepressant medications. (Tr. 611-12). In February 2012, plaintiff visited Dr. Stevens again and reported depression. (Tr. 607). She reported that her mood status was "uncontrolled." (*Id.*). Examination findings remained unchanged. (*Id.*). Dr. Stevens assessed depression and anxiety. (Tr. 608).

In May 2012, plaintiff visited Dr. Stevens and again reported depression. (Tr. 605). Specifically, she reported a lack of motivation, fatigue, and weight gain. (*Id.*). Examination findings remained unchanged. (*Id.*). Dr. Stevens assessed depression. (*Id.*). In June 2012, plaintiff visited Dr. Stevens for depression and reported that she "feels pretty good most of the time" and was satisfied with her current treatment. (Tr. 603). On examination, plaintiff was well-appearing, well-nourished, and in no apparent distress. (*Id.*). She had intact memory, judgment and insight, and normal mood and affect. (*Id.*). Dr. Stevens assessed depression. (Tr. 604).

In September 2012, plaintiff reported that her sleep was better and her energy was fair. (Tr. 601). Examination findings remained unchanged. (*Id.*). Dr. Stevens assessed depression. (Tr. 602). In December 2012, plaintiff visited Dr. Stevens complaining of depression, which she reported to be overwhelming before her menstrual cycle. (Tr. 599). Examination findings remained unchanged. (*Id.*). Dr. Stevens assessed major depressive disorder and prescribed vitamin B6. (Tr. 599-600).

In May 2013, plaintiff returned to Dr. Stevens and reported that her depression had been

"really bad for the past few months." (Tr. 597). On examination, plaintiff was well-appearing, well-nourished, and in no distress. (*Id.*). Dr. Stevens assessed chronic depression and situational reaction. (*Id.*). Dr. Stevens recommended that plaintiff consider taking Seroquel, but she refused. (Tr. 597-98).

In January 2014, plaintiff returned to Dr. Stevens for a follow-up visit. (Tr. 593). She reported her depression to be "controlled" at present. (*Id.*). In June 2014, plaintiff described her depression as more severe, noting that she was tired and "doesn't care about anything." (Tr. 589). In August 2014, plaintiff reported to Dr. Stevens that her depression had "lifted some" and she "decided her children deserve the better mom she is when she takes meds and will stay on them this time." (Tr. 571).

In November 2014, plaintiff returned to Dr. Stevens and reported that she always has some trouble with depression but is "functional now." (Tr. 569). Examination findings remained unchanged. (*Id.*). Dr. Stevens assessed depression and directed plaintiff to continue with her current antidepressant medications. (Tr. 569-70).

In August 2015, plaintiff visited Dr. Stevens and reported that she only has "2 acceptable days per week." (Tr. 563). She explained that she has "2 or more really bad days when she can barely get out of bed." (*Id.*). Plaintiff reported that she had struggled with depression for years and had last seen a psychiatrist ten years earlier. (*Id.*). She reported that her prescribed medications maintained her depression, but were "not effective in causing remission of depression." (*Id.*). She also reported to Dr. Stevens that she has trouble maintaining a cheerful mood, interacting in a pleasant manner with others, and has trouble going into big stores and driving. (*Id.*). On examination, plaintiff had a depressed mood and affect. (Tr. 564). Dr. Stevens assessed uncontrolled depression and referred plaintiff for a psychiatric consultation.

7

(*Id.*). In September 2015, plaintiff returned to Dr. Stevens and reported feeling tired in the morning and feeling irritable. (Tr. 561). On examination, plaintiff had a depressed mood and flat affect. (Tr. 562).

Plaintiff visited Dr. Sarah Rossetter, M.D., of Solutions Community Counseling and Recovery Center ("Solutions") for an initial psychiatric evaluation on December 10, 2015. (Tr. 535). Plaintiff reported that her depression and anxiety symptoms were out of control and medications "always seem to stop working eventually." (*Id.*). She reported feeling anxious, irritable, and isolated from others. (*Id.*). Plaintiff reported a low mood that never seemed to elevate to the point of normal. (*Id.*). Dr. Rossetter observed plaintiff as "pleasant and cooperative." (Tr. 537). She observed plaintiff's affect as moderately dysphoric and observed that plaintiff was future-oriented, motivated for treatment, and compliant with medications. (*Id.*). Dr. Rossetter diagnosed recurrent, moderate depressive disorder and post-traumatic stress disorder. (*Id.*). Dr. Rossetter adjusted plaintiff's current medications and instructed plaintiff to return for a follow-up visit and follow-up visits with a therapist regularly. (Tr. 538).

### ii. Medical opinions

Dr. Nancy Schmidtgoessling, Ph.D., performed a consultative psychological evaluation at the request of the Administration on June 13, 2014. (Tr. 509). Plaintiff reported that she is limited in her ability to work due to severe anxiety and depression that makes her afraid to leave the house. (Tr. 510). On examination, plaintiff appeared depressed with a flat affect and low energy. (Tr. 514). She frequently stared off, was slow to respond, and fidgeted with her hands. (*Id.*). Plaintiff was alert, responsive, and able to understand and follow directions. (Tr. 515). Her work pace was average to slow and her effort and persistence were adequate. (*Id.*). Dr. Schmidtgoessling opined that plaintiff tended to stare off and was slow to respond and process

8

information due to her depression. (Tr. 517). Dr. Schmidtgoessling also opined that plaintiff is generally anxious being around other people and therefore is significantly limited in her ability to interact with others. (Tr. 518). Dr. Schmidtgoessling further opined that plaintiff would have significant limitations in tolerating stress at a job due to her symptoms, including crying spells, low energy, loss of interest in activities, panic attacks while leaving the house, and anxiety around others. (*Id.*). Dr. Schmidtgoessling diagnosed unspecified depressive disorder, panic disorder, and agoraphobia. (*Id.*).

State agency psychologist Leslie Rudy, Ph.D., reviewed the file on July 14, 2014. (Tr. 101-03). She opined that plaintiff has understanding and memory limitations, including moderate limitations in her ability to understand and remember detailed instructions. (Tr. 102). She opined that plaintiff's anxiety symptoms disrupt her concentration and task persistence. (*Id.*). She estimated that plaintiff would be able to carry out 1-3 step tasks in a setting without demands for fast pace and high production. (*Id.*). Dr. Rudy further opined that plaintiff was markedly limited in her ability to interact appropriately with the general public. (Tr. 103). She opined that plaintiff could interact on an occasional and superficial basis with familiar persons in a nonpublic setting. (*Id.*). Dr. Rudy noted that plaintiff's tolerance for stress is diminished by her anxiety symptoms, but opined that she could adapt to occasional changes with some supervisory support. (*Id.*).

State agency psychologist Joseph Edwards, Ph.D., reviewed the file for reconsideration purposes on October 20, 2014. (Tr. 143-45). Dr. Edwards noted that plaintiff's anxiety symptoms interfere with her cognitive functioning and disrupt concentration and task persistence. (Tr. 143-44). He noted that plaintiff is able to carry out 1-3 step tasks in a setting with occasional flexibility for fast pace or high production demands. (Tr. 144). Dr. Edwards

9

noted that despite Dr. Schmidtgoessling's opinion, the more recent medical evidence of record demonstrated that plaintiff's symptoms had improved and her functional limitations are no more than moderate. (Tr. 145).

On September 4, 2015, Dr. Stevens completed a medical source statement as to plaintiff's ability to perform work related activities due to her mental impairments. (Tr. 529-31). Dr. Stevens checked boxes indicating that plaintiff was moderately impaired in her ability to accept instructions from supervisors or respond appropriately to criticism and her ability to work in coordination with others without distracting them or exhibiting behavioral extremes. (Tr. 529). Dr. Stevens estimated plaintiff would have a moderate impairment in her ability to perform and complete work tasks in a normal work day or work week at a consistent pace. (Tr. 530). Dr. Stevens assessed either mild or no limitations in the remaining 13 areas. (Tr. 529-30). Dr. Stevens opined that plaintiff's condition was likely to deteriorate if she was placed under the stress of an eight-hour per day, five day per week job. (Tr. 531). She also estimated that plaintiff is likely to have partial or full day unscheduled absences from work occurring five or more days per month due to her conditions. (*Id.*).

**E. Specific Error**

On appeal, plaintiff argues a single assignment of error: that the ALJ erred in weighing the medical opinion evidence of record, including the opinions of treating physician Dr. Stevens and consultative examiner Dr. Schmidtgoessling. (Doc. 13 at 5).

1. **ALJ Motta's weighing of the medical opinion evidence is supported by substantial evidence**

The Commissioner's regulations establish a hierarchy of acceptable medical source opinions. *Snell v. Comm'r of Soc. Sec.*, 3:12-CV-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013); 20 C.F.R. §§ 404.1527, 416.927. It is well-established that the findings and opinions

of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) in determining what weight to give the opinion. *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), 416.927(c)(i)-(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart*,

710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citation omitted). *See also Wilson*, 378 F.3d at 544 (ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Gayheart*, 710 F.3d at 376 (quoting *Wilson*, 378 F.3d at 544).

Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The opinion of a non-treating but examining medical source is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(3)-(6). The opinion of a non-treating but examining source is generally entitled to more weight than the opinion of a nonexamining source. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); 20 C.F.R. § 416.927(c)(1). Under the Social Security regulations, "a written report by a licensed physician who has examined the claimant and who sets forth in his report his medical findings in his area of competence . . . may constitute substantial evidence . . . adverse to the claimant" in a disability proceeding. *Lee v.*

12

*Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 402 (1971)). In addition, the opinions of state agency medical and psychological consultants may be entitled to significant weight where they are supported by record evidence. *Id.* (citing 20 C.F.R. § 404.1527(e)(2)(i)).

The ALJ assigned "little weight" overall to the opinion of Dr. Stevens and determined that her opinion was not entitled to controlling or deferential weight under the regulations. (Tr. 32). The ALJ noted that although she had treated plaintiff for several years, "she is an internist and is less qualified to offer an opinion on the [plaintiff]'s level of mental functioning." (*Id.*). The ALJ afforded some weight to Dr. Stevens' opinion that plaintiff had mild to moderate limitations because this is "supported by her own records, which generally show only some depressed moods and a flat affect." (*Id.*) (citing Tr. 532-33, Tr. 559-616). The ALJ noted that Dr. Stevens' opinion regarding plaintiff's mild to moderate limitations was also supported by mental health records from psychiatric treatment with Solutions and Dr. Rossetter, which "generally show only moderate symptomatology." (*Id.*) (citing Tr. 534-57). The ALJ also explained that Dr. Stevens' finding of mild to moderate impairment is "consistent with the limitations in the residual functional capacity." (*Id.*). The ALJ gave "little weight" to Dr. Stevens' opinion that plaintiff would miss work five times per month because this opinion was "speculative and unsupported by the objective findings discussed above." (*Id.*).

The ALJ afforded "little weight" to the opinion of Dr. Schmidtgoessling. The ALJ explained that "she evaluated the [plaintiff] on just one occasion, and her opinion is somewhat vague, as she did not suggest any specific functional limitations." (*Id.*). The ALJ also noted that some of Dr. Schmidtgoessling's observations and opinions are inconsistent with the evidence of record. (*Id.*).

13

Plaintiff alleges that the ALJ erred in declining to afford controlling weight to the opinion of her treating physician, Dr. Stevens. (Doc. 13 at 6). Plaintiff argues that the ALJ failed to comply with the applicable rules and regulations in affording Dr. Stevens' opinion "little weight." (*Id.* at 5). Plaintiff contends that Dr. Stevens' limitations as opined in her medical source statement are supported by the evidence of record, which "consistently documents her severe impairments and the limitations associated with her bipolar disorder; mood disorder; PTSD; anxiety; panic disorder; mood swings; and frequent panic attacks." (*Id.* at 7) (citing Tr. 378-428, 431, 436, 443, 447, 457-58, 560, 463-69, 509-19, 544-24, 529-31, 533, 535, 537, 542, 546, 548, 559, 563, 569, 589-603). Plaintiff asserts that the symptoms associated with these conditions, such as fatigue, lack of motivation, sadness, poor concentration, crying spells, low appetite, anhedonia, isolation, nightmares, and mood swings "correlate with the limitations set forth by the treating sources and limit Ms. Jandle's ability to perform work on a sustained basis." (*Id.* at 8). Plaintiff further argues that the ALJ erred in stating that Dr. Stevens is "merely an internist and thus 'less qualified.'" (*Id.*) (quoting Tr. 32). Plaintiff maintains that Dr. Stevens has a long-standing treatment history with plaintiff and based on her clinical examinations, she was able to make determinations about plaintiff's ability to sustain employment. (*Id.* at 10).

Plaintiff also alleges that the ALJ erred in weighing the opinion of Dr. Schmidtgoessling as it was supported by the record and the opinion of Dr. Stevens. (*Id.* at 11). Plaintiff also notes that Dr. Schmidtgoessling's opinion was given "great weight" by the state agency reviewing psychologists who noted that her opinion was consistent with the overall evidence suggesting some limitations. (*Id.*). Plaintiff also contends that the ALJ failed to explain the internal inconsistencies in Dr. Schmidtgoessling's opinion. (*Id.* at 12).

In response, the Commissioner contends that the ALJ's RFC finding accommodates Dr. Stevens' opinion and any purported error in the ALJ's analysis is thus harmless. (Doc. 19 at 9). The Commissioner argues that the ALJ gave good reasons for giving Dr. Stevens' opinion "little weight" and adequately balanced the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). (*Id.* at 10). The Commissioner argues that in giving some weight to Dr. Stevens' opinion that plaintiff had no more than mild to moderate limitations, the ALJ adequately explained that this was consistent with Dr. Stevens' treatment records as well as the mental health treatment records from Solutions. (*Id.*). The Commissioner contends that the ALJ gave good reasons for rejecting Dr. Stevens' opinion that plaintiff would miss work five times per month. (*Id.* at 11).

The Commissioner responds that the ALJ also reasonably assigned "little weight" to Dr. Schmidtgoessling's opinion because the regulations are clear that ALJs are not bound by any findings of state agency psychologists. (*Id.* at 13). The Commissioner also contends that the ALJ adequately evaluated and explained the weight given to Dr. Schmidtgoessling's opinion in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c).

The Court finds that the ALJ's weighing of Dr. Stevens' opinion is substantially supported by the record. Contrary to plaintiff's allegation, the ALJ thoroughly reviewed the medical and other evidence of record and provided "good reasons" for giving her opinion less than "controlling weight." The ALJ properly assessed Dr. Stevens' opinion for controlling weight, as required by the regulations and Sixth Circuit case law. Although Dr. Stevens was plaintiff's long-time treating family physician, numerous treatment records from the relevant time frame reflect mild to moderate limitations in plaintiff's mental impairments. (Tr. 611, 607, 605, 603, 601, 599, 597, 593, 571, 569). In June 2012, plaintiff reported that she "feels pretty

15

good most of the time." (Tr. 603). In January 2014, plaintiff reported her depression as "controlled." (Tr. 593). In November 2014, plaintiff reported some trouble with depression, but described herself as "functional now." On two occasions—in August 2015 and September 2015—Dr. Stevens observed that plaintiff had a "depressed mood and flat affect." (Tr. 562, 564). However, in December 2015, during a psychiatric evaluation, Dr. Rossetter at Solutions observed that plaintiff was pleasant, cooperative, future-oriented, motivated for treatment, and compliant with medications. (Tr. 537). Dr. Rossetter noted that plaintiff has a "moderate dysphoric affect" and diagnosed "moderate depressive disorder." (Tr. 537-38). The ALJ cited to many inconsistencies in the record and reasonably concluded that the objective evidence supported a finding of mild to moderate limitations, which is consistent with many of the limitations incorporated in her RFC determination. (Tr. 28).

The ALJ also reasonably concluded that Dr. Stevens' opinion that plaintiff would miss five days of work per month was unsupported and therefore was not entitled to controlling weight. (Tr. 32). In completing her medical source statement in September 2015, Dr. Stevens simply checked boxes indicating plaintiff's limitations and provided no explanation or citations to objective findings from her examinations to support her opinion that plaintiff would miss five days of work per month. (Tr. 529-31). The Sixth Circuit has held that an ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992)). Accordingly, the ALJ gave good reasons for rejecting Dr. Stevens' opinion.

Upon finding that Dr. Stevens' opinion was not supported by the evidence of record, the ALJ went on to weigh her opinion according to the appropriate regulatory factors: the length,

16

nature, and extent of the treatment relationship and the frequency of examination; the supportability of the opinions and consistency of the opinions with the record as a whole; the medical specialty of Dr. Stevens; and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(3)-(6). The ALJ considered Dr. Stevens' relationship with plaintiff spanning over several years and concluded that Dr. Stevens, as a family practice physician, is "less qualified" to offer an opinion on plaintiff's level of mental functioning. (Tr. 32). The ALJ also considered the inconsistency of Dr. Stevens' opinion with the record as a whole, explaining that it was inconsistent with the mild to moderate limitations reflected in her own records and other record evidence. Plaintiff's assertion that the ALJ erroneously considered Dr. Stevens to be an "internist" is not well-taken. Dr. Stevens, a family practice physician who is not mental health specialist, is authorized to provide an opinion on plaintiff's level of mental functioning. *See Lutz v. Comm'r of Soc. Sec.*, No. 3:15-cv-210, 2017 WL 3140878, at *4 (S.D. Ohio July 25, 2017) (citing several cases), *adopted*, 2017 WL 3432725 (S.D. Ohio Aug. 9, 2017). However, Dr. Stevens' lack of specialization in mental health is an appropriate factor for the ALJ to balance in accordance with the regulations. *See id. See also* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5); *Gayheart*, 710 F.3d at 376. Accordingly, the Court finds that the ALJ complied with the requisite two-step inquiry and gave "good reasons" for assigning Dr. Stevens' opinion "little weight."

The Court also finds that the weight given to Dr. Schmidtgoessling's opinion is supported by substantial evidence. Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Walton v. Comm'r of Soc. Sec.*, No. 97–2030, 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. June 7, 1999). However, "the opinions of State agency

17

medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record[.]" SSR 96-6p, 1996 WL 374180 at *2. Here, the ALJ reasonably concluded that Dr. Schmidtgoessling's opinion was inconsistent with the medical evidence of record and cited to many instances in the record demonstrating that her opinion either conflicted with the record evidence or was unsupported. The ALJ noted that Dr. Schmidtgoessling's observation that plaintiff tended to stare off and was slow to process and respond was inconsistent with her demeanor at the ALJ hearing. (Tr. 31). The ALJ noted that the record contained no evidence indicating that plaintiff was distracted by emotional issues so as to affect her ability to work and cited to contrary evidence in the record showing that plaintiff's hobbies included reading, working on crossword puzzles, and tending to her plants. (*Id.*). The ALJ reasoned that Dr. Schmidtgoessling's opinion regarding plaintiff's ability to interact with others was unsupported by the record and conflicted with her testimony that she is quiet, does not fight, and does not have significant difficulty getting along with others. (*Id.*). The ALJ also reasoned that the record did not support Dr. Schmidtgoessling's conclusion that plaintiff would be "significantly limited" in her ability to tolerate stress. Nevertheless, the ALJ's RFC determination ultimately incorporated many of the limitations assessed by Dr. Schmidtgoessling, including limitations involving stress, routine changes, and contact with the public and coworkers. (Tr. 28). Therefore, any error in this regard is deemed harmless.

For the above reasons, the undersigned finds that the ALJ properly weighed the medical opinions of Drs. Stevens and Schmidtgoessling. Accordingly, plaintiff's single assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this case be closed on the docket of the Court.

Date: 1/8/18

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELISSA R. JANDLE,
Plaintiff,

Case No. 1:17-cv-78
Black, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).